UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
HARRY TU and ALDELO SYSTEMS, INC..,

                               Plaintiffs,              **MEMORANDUM and ORDER**

           -against-                            08-CV-3822 (SLT) (RM)

TAD SYSTEM TECHNOLOGY INC. and
ANDY WONG a/k/a TIN WONG,

                               Defendants.
-----------------------------------------------------------------x
**TOWNES, United States District Judge:**

      Harry Tu and Aldelo Systems, Inc. ("Aldelo") (collectively, "Plaintiffs") bring this action against TAD System Technology Inc. ("TAD") and Andy Wong, a/k/a Tin Wong, (collectively, "Defendants") for infringement of its copyrighted material and trademarks. Harry Tu is the President and CEO of Adeldo, a software and specialized research and development company which serves businesses in the hospitality market. Complaint ¶ 8. Tu was the programmer and designer of Aldelo's flagship product, "ALDELO for Restaurants," a point of sale software program designed to address the needs of food service and bar establishments. *Id.* ALDELO for Restaurants is subject to copyrights registered with the United States Copyright Office and owned by Tu. *Id.* at ¶ 9. On the packaging and advertising for ALDELO for Restaurants, Plaintiffs prominently display at least four trademarks validly-registered with the United States Patent and Trademark Office. *Id.* at ¶ 10.

      At some point, Plaintiffs allege that Defendants began to pirate the ALDELO for Restaurants by producing an unauthorized derivative work of the program that allows an individual to use ALDELO for Restaurants without paying a licensing fee to Aldelo. *Id.* at ¶ 11.

1

Plaintiffs claim that Defendants sell and distribute the pirated version through emails to Aldelo's authorized dealers and by advertising on various internet blogs. *Id.* at ¶ 13.

On September 18, 2008, Plaintiffs commenced this action pursuant to the Copyright Act, 17 U.S.C. § 501(a), the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(1)(A), and the Lanham Act, 15 U.S.C. § 1114(1). Defendants failed to respond to the Complaint and on October 31, 2008, Plaintiffs moved for a default judgment against Defendants. The Clerk of the Court noted an entry of default against Defendants on December 2, 2008. For the reasons stated below, Plaintiffs' motion is granted and judgment shall be entered in favor of Plaintiffs in the amount of $174,297.31.

## DISCUSSION

**I.     Liability**

Plaintiffs have sufficiently established Defendants' liability in this case. "Where, as here, 'the court determines that [a] defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Chen v. Jenna Lane, Inc.*, 30 F. Supp 2d 622, 623 (S.D.N.Y. 1998) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2688, at 58-59 (3d ed. 1998)). In other words, a party's default is almost universally deemed an admission of the plaintiff's well-pleaded allegations of fact pertaining to liability. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006); *In re Crazy Eddie Secs. Litig.*, 948 F.Supp. 1154, 1160 (E.D.N.Y.1996). Nevertheless, "[e]ven after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *In re Wildlife Ctr., Inc.*, 102 B.R. 321, 325 (E.D.N.Y. 1989) (internal quotation marks omitted). In this regard, "[o]nly 'in very narrow, exceptional circumstances' may a court find an allegation not 'well

pleaded.'" *In re Crazy Eddie*, 948 F.Supp. at 1160 (quoting *Trans World Airlines Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971) (internal quotation marks omitted), *rev'd on other grounds*, 409 U.S. 363 (1973)).

Such narrow, exceptional grounds are not present in this case and the facts pleaded in Plaintiffs' Complaint sufficiently establish violations of the Copyright Act, the Digital Millennium Copyright Act, and the Lanham Act. Specifically, Defendants worked in concert with another individual to develop a "cracked" version of Plaintiffs' copyrighted software program, ALDELO for Restaurants. Compl. ¶ 11. The cracked version of the program allows a person to use ALDELO for Restaurants without paying a licensing fee to plaintiff Aldelo. *Id.* The cracked version of ALEDLO for Restaurants was created by using a memory loader program to forcefully remove or bypass an application code that checks for licensing and activation. *Id.* Defendants sell and distribute, for profit, the cracked version of the program bearing Plaintiffs' registered trademarks, through unsolicited email messages to Aldelo's authorized dealers and by advertising on various internet blogs. *Id.* at ¶12. Defendants also provide installation and service of the cracked version of ALDELO for Restaurants for a fee. *Id.* at 15. In some cases, the purchasers of the cracked version of ALEDLO for Restaurants are unaware that they are using a pirated version of the program. *Id.* at ¶ 12. Plaintiffs never gave Defendants permission or license to create, sell, distribute, install, or service any version of the copyrighted ALDELO for Restaurants. *Id.* at ¶ 17. Defendants were also not authorized to use Plaintiffs' registered trademarks. *Id.*

Accordingly, under these facts deemed by the Court to be admitted, Defendants willfully infringed Plaintiffs' copyright and trademarks in violation of the Copyright Act, 17 U.S.C. § 501(a), and the Lanham Act, 15 U.S.C. § 1114(1). *See Microsoft Corp. v. Computer Care*

*Center*, No. 06-CV-1429, 2008 WL 4179653, at *6 (E.D.N.Y. Sept. 10, 2008). The admissions also satisfy liability under the DMCA, which provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(1)(A). To circumvent a technological measure "means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. § 1201(3)(A). Thus, Defendants actions in using a memory loader program to forcefully remove or bypass ALDELO for Restaurants' application code circumvents a technological measure that effectively controls access to Plaintiffs' copyrighted program. *See Davidson & Associates, Inc. v. Internet Gateway, Inc.*, 334 F. Supp. 2d 1164, 1183 (E.D.Mo. 2004).[1]

## II. Damages

Plaintiffs do not seek actual damages, but instead request statutory damages for each of the Defendants' copyright, DMCA, and trademark violations. The Copyright Act, DMCA, and Lanham Act all contain provisions authorizing an award of statutory damages in lieu of actual damages. *See* 17 U.S.C. § 504(c); 17 U.S.C. § 1203(c)(3)(A); 15 U.S.C. § 1117(c). The award of statutory damages is especially fitting in the default judgment context where Plaintiffs are without the benefit of any disclosure by the infringer, leaving damages uncertain. *Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999) (awarding statutory damages where trademark infringer defaulted in the case).

### a. Statutory Damages

---

[1] Liability for these violations extends jointly and severally to both TAD System Technology Inc. and Andy Wong. Where the facts show that a corporate employee was the "moving, active conscious force behind [the defendant corporation's] infringement," personal liability will attach. *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 2d 899, 913 (E.D.N.Y. 1988). Wong concedes that he was the person responsible for the infringing acts and practices. Compl. ¶ 4. Accordingly, personal liability will attach to Wong.

4

The Copyright Act provides, in relevant part, that

> (1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.
>
> (2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.

17 U.S.C. § 504(c). Plaintiffs request the statutory maximum for a willful infringement of the Copyright Act in the amount of $150,000.

The DMCA establishes that,

> At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just.

17 U.S.C. § 1203(c)(3)(A). Plaintiffs seek $2,500 for Defendants' DMCA violation.

Finally, the Lanham Act provides statutory damages in the amount of,

> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c). Plaintiffs ask for $6,000,000 in statutory damages for Defendants' counterfeiting activity, which amounts to the maximum statutory damages for the willful, unauthorized use of Plaintiffs' three trademarks.

### b. Duplicative Damages

Plaintiffs argue that they should be awarded statutory damages under all three causes of action established in the Complaint. In general, courts have recognized the bar to double recovery in the intellectual property context. *See, e.g., MuscleTech Research and Dev., Inc. v. East Coast Ingredients, LLC*, No. 00-CV-753A, 2007 WL 655755, at *5 (W.D.N.Y. Feb. 26, 2007) ("Plaintiffs may not . . . recover separate awards for both its trademark violations and copyright infringement claims but, rather, must elect between the two theories to avoid a double recovery."); *Video Aided Instruction, Inc. v. Y & S Express, Inc.*, No. 96 CV 518, 1996 WL 711513, at *3 n.2 (E.D.N.Y. Oct. 29, 1996); *Twentieth Century Fox Film Corp. v. 316 W. 49th Street Pub. Corp.*, No. 90-CV-6083, 1990 WL 165680, at *6 n.9 (S.D.N.Y. Oct. 23, 1990) (where identical acts violate both copyright and trademark laws, damages need be determined only once); *Manufacturers Techs., Inc. v. Cams, Inc.*, 728 F.Supp. 75, 85 (D.Conn. 1989) (separate awards under Lanham and Copyright Acts improper for the same "wrong"). Nevertheless, other courts have found no double recovery bar where the plaintiff seeks statutory damages under the Copyright Act and disgorgement of the infringer's ill-gotten profits under the Lanham Act. *See, e.g., Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010-11 (9th Cir. 1994) (awarding statutory damages under Copyright Act and disgorgement of defendant's profits under the Lanham Act); *Viacom Int'l, Inc. v. Fanzine Int'l, Inc.*, No. 98-CV-7448, 2001 WL 930248, at *3-6 (S.D.N.Y. Aug. 16, 2001) (same); *Brown v. Party Poopers, Inc.*, No. 00-CV-4799, 2001 WL 1380536, at *5-6 (S.D.N.Y. July 9, 2001) (same); *Lyons P'ship, L.P. v. AAA Entm't*, No. 98-CV-0475, 1999 WL 1095608, at *8-10 (S.D.N.Y. Dec. 3, 1999) (same).

Only three courts in this Circuit appear to have reached the issue whether Plaintiffs may seek duplicative statutory damages under multiple legal theories for the same intellectual property injury. Recently, this Court adopted the recommendation and report of a magistrate

6

judge declining to permit statutory damages under both the Copyright Act and the Lanham Act. *See Computer Care Center, Inc.*, 2008 WL 4179653, at *9-10. *Computer Care Center, Inc.* in turn, cited an unpublished Memorandum and Order in *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, No. 01-CV-750, slip op. at 35 (E.D.N.Y. Jan 24, 2003), *aff'd in part, vacated in part on other grounds,* 413 F.3d 257 (2d Cir. 2005), in which the district court held that the award of statutory damages under the Copyright and Lanham Act would constitute "an impermissible double recovery." The *Island Software* court held that, "although [the defendants] may have committed 'two wrongs,' under the separate statutory schemes governing trademark and copyright . . ., those wrongs . . . produced one harm – [plaintiff's] economic loss." *Id.* One court in this Circuit disagreed with this approach. In *Microsoft Corp. v. Black Cat Computer Wholesale, Inc.*, 269 F. Supp. 2d 118, 123-24 (W.D.N.Y. 2002), the court relied on the Ninth Circuit's decision in *Nintendo* to grant statutory damages to the plaintiff under both the Copyright and Lanham Acts.

This Court holds that Plaintiffs are not entitled to duplicative recoveries for the same intellectual property theft under multiple theories of liability. As the Second Circuit has made clear, "[a] plaintiff seeking compensation for the same injury under different legal theories is of course entitled to only one recovery." *Indu Craft, Inc. v. Bank of Baroda,* 47 F.3d 490, 497 (2d Cir. 1997). In an analogous case, the Second Circuit held that a party "may not obtain a double recovery where the damages for copyright infringement and trade secret misappropriation are coextensive." *Computer Assocs. Intern., Inc. v. Altai, Inc.*, 982 F.2d 693, 720 (2d Cir. 1992).

These principles apply with greater force when a plaintiff seeks statutory damages under multiple legal theories. "The provision for statutory damages serves a dual purpose--to compensate copyright owners and to deter potential infringers." *N.Y. Chinese TV Programs, Inc.*

7

*v. U.E. Enterprises, Inc.*, No. 89-CV-6082, 1991 WL 113283, at *3 (S.D.N.Y. June 14, 1991) (citing *Fitzgerald Publishing Co. v. Baylor Publishing Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)). First, awarding duplicative statutory damages under different legal theories fails to serve the first aim as compensation for the same injury could be and should be accomplished under a single grant of statutory damages. *See Gucci v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) ("To the extent possible statutory damages should be woven out of the same bolt of cloth as actual damages.") (internal quotation marks omitted). Second, while maximizing the judgment against Defendants through duplicative statutory damages may produce a greater deterrent effect, under the facts of this case, the broad range of statutory damages available under either the Copyright Act or Lanham Act is sufficient to put potential infringers "on notice that it costs less to obey [intellectual property] laws than to violate them." *N.Y. Chinese TV Programs, Inc.*, 1991 WL 113283 at *4 (internal quotation marks omitted).

Here, there is no doubt that the damages sustained by Plaintiffs are coextensive; it is Defendants' manufacture, sale, and distribution of a "cracked" version of ADELO for Restaurants that accounts for Plaintiffs' economic damages under either of the three intellectual property statutes. Plaintiffs can recover their economic loss and the Court can impose some punitive or deterrent element of damages under any of the three Acts Defendants violated, and it is not necessary to award the same damages under all three. Accordingly, the Court concludes that Plaintiffs are not entitled to duplicative statutory damages under the Copyright Act, DMCA, and the Lanham Act. Rather, because the gravamen of this case is that Defendants sold and distributed a pirated version of Plaintiffs' copyrighted material, the Court finds that damages under the Copyright Act to be the most appropriate remedy.[2]

---

[2] The Complaint states that in "some cases" purchasers were not aware that they were using a cracked version of ALDELO for Restaurants. Compl. ¶ 12. It logically follows that most

8

### c. Computation of Statutory Damages

The Court now turns to the computation of Plaintiffs' statutory damages under the Copyright Act. Under § 504(c)(1), the court must award from $750 to $30,000, "as the court considers just," for each work infringed. 17 U.S.C. § 504(c)(1). "A single infringer of a single work is liable for a single amount" within this range, "no matter how many acts of infringement are involved in the action." *N.Y. Chinese TV Programs, Inc.*, 1991 WL 113293 at *3 (internal quotation marks omitted). Under § 504(c)(2), the court has discretion to increase the award to $150,000 where it finds that the infringement was committed "willfully." 17 U.S.C. § 504(c)(2). For purposes of enhancing statutory damages, a defendant acts willfully within the meaning of § 504(c)(2) when the defendant has knowledge that the actions committed constituted infringement. *Fitzgerald Publishing*, 807 F.2d at 1115. An infringement is willful if the defendant actually or constructively knows (as inferred from the defendant's conduct) that his actions constitute an infringement, *N.A.S. Import, Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992), or if the defendant acts with reckless disregard as to the possibility of the same. *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir. 1993). The Court infers such willful knowledge in this case from Defendants' failure to defend this action, *see Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003), and Defendants' deemed admission that their actions were "unlawful," *see* Compl. ¶ 16. Finally, the creation of a method to forcefully remove or bypass an application code that checks for licensing and activation suggests willfulness. Thus, the Court may enhance Plaintiffs' statutory award to a maximum of $150,000.

---

purchasers knew that they were using a pirated version of the program. Accordingly, purchasers were likely motivated by the allure of a cheaper product rather than an Aldelo- trademarked and sanctioned product. Such circumstances reinforce the primacy of the copyright violation in this case.

Courts maintain "wide discretion" in computing the award of statutory damages but look to the following factors in informing their decision: (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant. *Fitzgerald Pub. Co., Inc.*, 807 F.2d at 1116-17.

Because of Defendants' default in this matter, the Court has almost no evidence to adjudge the first three *Fitzgerald* factors. Yet, the failure to establish actual damages does not impair this Court's ability to devise a proper statutory award. *See Entral Group Int'l, LLC v. Honey Café on 5th, Inc.*, No. 05-CV-2290, 2006 WL 3694584, at *6 (E.D.N.Y. Dec. 14, 2006) (awarding $150,000 for defendants' willful infringement although neither the plaintiff's losses nor the defendants' profits were established). The Court notes that Defendants acknowledge advertising their pirated program over the internet, Compl. ¶ 14, and thus Defendants had access to a "virtually limitless number of customers." *Rolex Watch U.S.A., Inc. v. Jones*, No. 99-CV-2359, 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002); *see also Louis Vuitton*, 211 F. Supp. 2d at 584 ("While the record contains no evidence of the actual scope of the defendants' sales, nor the number of hits the internet site received, given the scope of the internet supermarket, such sale offerings are presumptively quite high. . . .").

The Court focuses on the latter factors to determine the appropriate statutory award, especially the factors related to deterring Defendants' infringing actions as well as those of others who might consider engaging in infringing conduct in the future. In this regard, "courts have repeatedly emphasized that defendants must not be able to sneer in the face of copyright

10

owners and copyright laws." *N.Y. Chinese TV Programs, Inc.*, 1991 WL 113283 at *4 (internal quotation marks omitted). It is an unfortunate irony that the progression of technology diminishes our ability to safeguard the intellectual property that is the lifeblood of further technological progress. Defendants' misuse of technology to pirate Plaintiffs' product was an egregious and willful act designed to "sneer" in the face of Plaintiffs' copyright and intellectual property laws. An award of the enhanced statutory maximum is appropriate and reasonable to compensate Plaintiffs and to deter Defendants and future infringers. The statutory maximum is especially fair in the context of Defendants' additional violation of the Lanham Act and the DMCA. Accordingly, the Court awards Plaintiffs $150,000 in statutory damages. *Cf. Computer Care Center*, 2008 WL 4179653 at *11 (permitting maximum unenhanced statutory damages for the distribution of unauthorized copies of Microsoft software where Microsoft did not seek willfulness enhancement); *Microsoft v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007) (same).

### III.  Permanent Injunction

In addition to statutory damages, Plaintiffs also request a permanent injunction to prevent any future infringement of their copyrighted material and trademarks and to bar any future circumvention of the copyright protection systems of their product. Section 502(a) of the Copyright Act provides that any court may grant "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Similarly, Section 34(a) of the Lanham Act provides courts with the "power to grant injunctions, according to the principles of equity and upon such terms as the Court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office[.]" 15 U.S.C. § 1116(a). Finally, under the DMCA, "the court . . . may grant temporary

and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation. . . ." 17 U.S.C. § 1203(b)(1).

The standard for the grant of injunctions is similar under all three statutes. In the copyright context, "[p]ermanent injunctions are generally granted where liability has been established and there is a threat of continuing infringement." *U2 Home Entm't, Inc. v. Fu Shun Wang*, 482 F. Supp. 2d 314, 319 (E.D.N.Y. 2007); *see also Island Software & Computer Serv., Inc. v. Microsoft Corp.*, No. 01-CV-750, 2006 WL 1025915, at *2 (E.D.N.Y. Apr. 13, 2006) ("[W]hen a copyright plaintiff has established liability and a threat of continuing infringement, he is entitled to an injunction"). Similarly, injunctive relief is available under the Lanham Act where there is a likelihood of confusion or deception as a result of a defendant's conduct. *See e.g., Warner Bros. Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir. 1981). Under the DMCA, "injunctive relief is appropriate if there is a reasonable likelihood of future violations absent such relief and, in cases brought by private plaintiffs, if the plaintiff lacks an adequate remedy at law." *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 343 (S.D.N.Y. 2000). In general, a plaintiff may obtain a permanent injunction if it shows (1) "actual success on the merits" and (2) "irreparable harm." *Philip Morris USA, Inc. v. A&V Minimarket, Inc.*, 592 F. Supp. 2d 669, 675 (S.D.N.Y. 2009).

In this case, Plaintiffs have achieved "actual success on the merits" through the admission of liability arising from Defendants' default. *See id.* Furthermore, the Complaint establishes that Defendants unlawfully sell, distribute, install and service Plaintiffs' copyrighted and trademarked material. Compl. ¶ 12, 15. Defendants also have worked with another individual to remove or bypass ALDEO for Restaurants' application code. *Id.* at ¶ 11. Nothing in the facts indicates that Defendants have ceased this infringing activity; thus, a permanent injunction is warranted in this

12

case. Plaintiffs have not submitted the proposed terms for a permanent injunction in this matter. Plaintiffs are hereby directed to file a proposed order for injunctive relief with this Court within three weeks of the date of this Memorandum and Order.

## IV. Impoundment

Plaintiffs also seek an order to impound and destroy Defendants' masters, tapes, film, negatives, discs, disc drives, digital media, or other articles by means of which unauthorized copies of ALDELO for Restaurants may be reproduced pursuant to 17 U.S.C. § 503(a)(1)(C) and 17 U.S.C. § 1203(b)(6). It has been noted that "Section 503(a) does not make impoundment a mandatory form of relief; the Court 'may' impound the allegedly infringing materials. And any court-ordered impoundment must be effected on 'terms [the Court] may deem reasonable.'" *Paramount Pictures Corp. v. Doe*, 821 F.Supp. 82, 86 (E.D.N.Y. 1993).

Since this Court shall issue a permanent injunction barring Defendants from continuing to infringe Plaintiffs' copyrighted material and trademarks, the impoundment and destruction of Defendants' equipment related to the reproduction of software programs is unnecessary and potentially over broad. Plaintiffs' request is denied. *See Ted Arnold Ltd. v. Silvercraft Co.*, 259 F.Supp. 733, 736 (S.D.N.Y. 1966) (denying a request for impoundment "there being no extraordinary circumstances to require it").

## V. Attorneys' Fees

Plaintiffs finally seek to recover $39,322.70 in costs and attorneys' fees. Once again, all three statutes at issue in this case authorize courts to award prevailing parties their reasonable costs and attorneys' fees. *See* 17 U.S.C. § 505 ("[T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs."); 17 U.S.C § 1203(b)(5) ("[T]he court . . . in its discretion may award reasonable attorney's fees to the prevailing party[.]"); 15 U.S.C. §

1117(a)("The court in exceptional cases may award reasonable attorney fees to the prevailing party."). The Court need only consider this remedy under the Copyright Act. *See Computer Care Center*, 2008 WL 4179653, at *13 (determining attorneys fees solely under the Copyright Act and declining to consider fees under the Lanham Act).

Courts in copyright infringement cases do not award fees as a matter of course, but rather consider a nonexclusive list of factors such as "frivolousness, motivation, objective unreasonableness . . . and the need in particular circumstances to advance considerations of compensation and deterrence." *Matthew Bender v. West Publ'g*, 240 F.3d 116, 121 (2d Cir. 2001) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n.19 (1994)). Under the Copyright Act, an award of fees is appropriate to promote the goal of deterrence where the evidence supports a finding of willfulness. *Computer Care Center*, 2008 WL 4179653, at *13. As established above, the Court finds that Defendants acted willfully in infringing Plaintiffs' copyright. Accordingly, in furtherance of the goal of deterrence, the Court holds that Plaintiffs are entitled to reasonable attorneys' fees and costs under the Copyright Act.

### a. Hours

In the Second Circuit, courts determine a "presumptively reasonable fee" award by calculating the product of the hours reasonably expended and a reasonable hourly rate. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). In addition, all requests for attorneys' fees in this Circuit must be accompanied by contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

Plaintiffs retained Chicago law firm Goldberg Kohn for purposes of pursuing this action. Plaintiffs provided the Court with a summary of the Goldberg Kohn attorneys' fees, costs, and time records in this litigation. Mem. L. Supp. Pls.' M. Def. J. 11; Alcantara Decl., Ex. 3; Alcantara Decl.1 Ex. 3. Records show that partner Oscar L. Alcantara, an attorney since 1993 who focuses on intellectual property matters, worked 15.25 hours at an hourly rate of $475.00; Brian D. Fagel, a principal at Goldberg Kohn, worked 36.50 hours at an hourly rate of $420.00; and Kerry D. Nelson, an associate, worked 36.50 hours at an hourly rate of $260.00. Attorneys' fees from Goldberg Kohn thus account for a total of $28,138.75.

The Court is concerned that Plaintiffs are attempting to reap attorneys' fees for work unrelated to this litigation. The sum sought by Plaintiffs for Goldberg Kohn attorneys' fees represents the total costs of all services provided by Goldberg Kohn to Plaintiffs from August 15, 2008 to January 30, 2009. Alcantara Decl., Ex. 3. Several matters included in Goldberg Kohn's time record are patently unrelated to Defendants or this litigation, such as matters relating to "Madrid-WIPO filings," "trademark applications," "sales in China," and a "China complaint." *See* Alcantara Decl., Ex. 3. The Court has reviewed the time records line-by-line and has stricken any matter not directly pertaining to this case.[3] After this review, the Court reduces Oscar L. Alcantara's hours by 4.5 for a total of 10.70 hours and reduces Brian D. Fagel's hours by 12.75 for a total of 23.75 hours.

In addition, Plaintiffs retained local counsel, Carter Ledyard & Milburn, LLP, a law firm located in the Southern District of New York. The time records for Carter Ledyard indicate that Rose Auslander, presumably a partner, billed a total of 4.50 hours at the hourly rate of $525.00

---

[3] The Court disallows costs for services performed on 8/15/08 ("re copyright enforcement in China"), 8/18/08, 8/21/08, 8/28/09, 9/2/08, 9/5/08, 9/9/08, 9/10/08, 9/17/08, 9/23/08, 10/6/08, 10/8/08, 10/14/08, 10/15/08, 11/3/08, 11/4/08, 11/5/08, 11/7/08, 11/25/08, 1/16/09, 1/28/09. Alcantara Decl., Ex. 3.

15

and Kenneth Levine, presumably a senior associate, worked a total of 14.80 hours at the hourly rate of $395.00. Levine Decl., Ex. 3. The records also indicate that Plaintiffs received a 15% discount on these attorneys' services. Thus, Rose Auslander's billable rate was $446.25 an hour and Kenneth Levine's was $335.75 an hour. Several other individuals, appearing as "AM," "EC," "DJM1" on the time records, apparently worked on Plaintiffs' matter; however, the records do not indicate their position or hourly rate. The billing records for Carter Ledyard also show costs of $2.00 for reproduction, $16.00 for staff meals, $350 in filing fees, $29.04 for staff overtime, $64.12 for Lexis/Westlaw usage, and $36.90 in miscellaneous costs. *Id.*

### b. Rates

In determining whether these attorneys' rates are warranted, the court must determine "'what a reasonable, paying client would be willing to pay,'" in this district "given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Simmons v. N.Y. City Transit Auth.*, No. 08-4079-cv, 2009 U.S. App. LEXIS 17079, at *7 (2d Cir. Aug. 3, 2009) (quoting *Arbor Hill*, 493 F.3d at 118). The Second Circuit recently held in *Simmons* that "a district court must first apply a presumption in favor of application of the forum rule," under which "district courts are directed to calculate attorney's fees based on the rates prevalent in the forum in which the litigation was brought." *Simmons*, 2009 U.S.App. LEXIS 17079, at *2, 11-12. "[T]o overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Id.* at *12.

Here, Plaintiffs have presented no evidence that attorneys within the Eastern District of New York would have produced a substantially different result in this case and, thus, the Court applies the hourly rates for attorneys in the Eastern District of New York to Plaintiffs' claim for

attorneys' fees. Recent cases awarding fees in the Eastern District of New York, which *Simmons* holds are controlling here, indicate that these attorneys' rates are significantly higher than those typically approved. *See, e.g., Trustees of the Local 813 I.B.T. Ins. Trust Fund v. Amanda Carting Corp.*, No. 07-CV-656, 2007 WL 4324019, at *6 (E.D.N.Y. Dec.7, 2007) (noting that recent hourly rates approved in the Eastern District range from $200 to $375 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for paralegals); *Baruch v. Healthcare Receivable Mgmt., Inc.*, No. 05-CV-5392, 2007 WL 3232090, at *5 (E.D.N.Y. Oct. 30, 2007) (noting that courts in this district have awarded partners hourly rates ranging from $200 to $375); *Expeditors Int'l of Wash., Inc. v. Rubie's Costume Co., Inc.*, No. 03 CV 3333, 2007 WL 430096, at *2 (E.D.N.Y. Feb. 2, 2007) (approving an hourly rate of $340-$370 for an attorney with 25 years of litigation experience, although noting that it was on the high side). Nevertheless, intellectual property matters require specialized knowledge and courts in this district recognized higher than average hourly rates for experienced intellectual property attorneys. *See Motorola, Inc. v. Abeckaser*, No. 07-CV-3963, 2009 WL 2568529, at *5 (E.D.N.Y. Aug. 5, 2009); *Computer Care Ctr., Inc.*, 2008 WL 4179653, at *14-15 (approving an hourly rate of $500 for a partner who has specialized in intellectual property litigation since 1994, and $385 for an associate).

c. **Application**

Under these circumstances, the Court will award attorneys' fees at the higher range of rates in the Eastern District of New York – namely, $375 for partners, $250 for senior associates, and $150 for junior associates. Applying this formula to Goldberg Kohn attorneys, Plaintiffs are entitled to attorneys' fees in the amount of $18,393.75 (34.45 partner hours plus 36.50 junior associate hours). Plaintiffs are entitled to recover $5,387.50 in fees for local counsel (4.50

17

partner hours and 14.80 senior associate hours). The Court also approves the $498.06 in local counsel's costs. Plaintiffs are hereby awarded $24,279.31 in attorneys' fees and costs.

## CONCLUSION

For the reasons stated above, Plaintiffs motion for a default judgment is granted. TAD System Technology Inc. and Andy Wong, a/k/a Tin Wong, shall be jointly and severally liable to Plaintiffs for $150,000 in statutory damages pursuant to § 17 U.S.C. § 504(c)(2) and $24,297.31 in attorneys' fees and costs. The Clerk of Court is directed to enter judgment in favor of Plaintiffs in the total amount of $174,297.31. Plaintiffs are also entitled to injunctive relief and are directed to submit a proposed permanent injunction order to this Court within three weeks of the date of this Memorandum and Order.

**SO ORDERED.**

/s/ SLT
SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
September 9, 2009